# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SOLVE TOGETHER, LLC**, *et al.*, | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 22-2090-KSM** |
| **FEDEX CORPORATION**, *et al.*, | |
| Defendants. | |

## MEMORANDUM

**MARSTON, J.**                                                                                   **October 4, 2022**

Plaintiff Solve Together, LLC ("Solve Together"), a Philadelphia-based limited liability corporation, contracted with Defendants FedEx Corporate Services, Inc. and FedEx Corporation (together, "FedEx") to supply facemasks and other personal protective equipment ("PPE") to FedEx's headquarters in Memphis, Tennessee. (Doc. No. 36 ¶¶ 7–8, 30.) Although FedEx accepted delivery of millions of dollars' worth of PPE, it refused to accept all of the PPE that Solve Together delivered. (*Id.* ¶ 11.) Plaintiffs Solve Together and its parent company, the Fine Companies, LLC ("FineCo"), bring suit against FedEx, claiming that FedEx breached eight contracts and caused Solve Together to lose over $500 million. (*See generally* Doc. No. 36.) Presently before the Court is FedEx's motion to transfer this action to the United States District Court for the Western District of Tennessee. (Doc. No. 12.) Plaintiffs oppose the motion. (Doc. No. 23.) For the reasons below, FedEx's motion is granted.

**I.     BACKGROUND**

Because the Court writes primarily for the benefit of the parties, we provide an

abbreviated recitation of the facts alleged in Plaintiffs' First Amended Complaint.[1]

At the onset of the COVID-19 pandemic, global supply chains were struggling to keep up with the demand for PPE. (Doc. No. 36 ¶ 3.) FineCo recognized the gap in the market and formed a new entity, Solve Together, to supply "millions of dollars' worth of PPE to major organizations and institutions, like hospital systems, government agencies, and major corporations." (*Id.* ¶¶ 4–5.) FedEx was one of those corporations. (*Id.* ¶¶ 7–8.) It contracted with Solve Together for custom facemasks and other PPE, and in the Spring and Summer of 2020, FedEx accepted delivery of and paid for over $65 million worth of PPE. (*Id.*)

In the Summer of 2020, FedEx's "need for PPE began to wane and the market prices for these goods declined," so it "made the strategic choice to breach several agreements it had previously made with [Solve Together] for PPE at the height of global demand." (*Id.* ¶ 10.) Specifically, FedEx "failed to pay shipping and storage charges associated with FedEx's orders of . . . disinfecting wipes." (*Id.* ¶ 11.) FedEx also refused to accept delivery of or pay for" nearly three million packs of disinfecting wipes, two million FedEx-branded facemasks, four million pairs of gloves, and 48 million canisters and packs of "EPA-registered disinfectant wipes." (*Id.*) FedEx also allegedly breached a "non-circumvention, non-disclosure agreement" by "circumventing Plaintiffs . . . and engaging with Plaintiffs' suppliers of facemasks" directly. (*Id.*) Additionally, FedEx used or lost in their warehouses roughly 100,000 packs of disinfectant wipes they refused to pay for, and because FedEx used or lost these wipes, Solve Together was unable to resell them. (*Id.*)

FedEx's failure to satisfy its contractual obligations restricted Solve Together's liquidity.

---

[1] In deciding a motion to transfer venue, the Court accepts as true the allegations in the complaint. *See Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Tr.*, Civil Action No. 05-6827, 2006 WL 1737471, at *1 (E.D. Pa. June 21, 2006).

Solve Together was unable to pay sales tax, so the State of Tennessee assessed a $1 million penalty.  (*Id.* ¶ 26.)  Solve Together was also forced to cancel orders from other clients, which caused the company to lose an expected $107 million in profits.  (*Id.* ¶¶ 11, 28.)  In sum, Plaintiffs seek over $500 million in damages from FedEx.

## II.     LEGAL STANDARD

In federal court, venue transfers are governed by 28 U.S.C. §§ 1404(a) and 1406(a).  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).  Section 1404(a) governs transfer when "both the original and the requested venue are proper."  *Id.*  Under Section 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

A court must conduct a two-step inquiry in considering a motion governed by Section 1404(a).  *See Vt. Juvenile Furniture Mfg., Inc. v. Factory Direct Wholesale, Inc.*, 317 F.R.D. 16, 20 (E.D. Pa. 2016).  It must first determine whether venue is proper in the transferee district and, if so, it must then determine whether transfer would be in the interests of justice.

The Third Circuit has enumerated a non-exhaustive list of public and private interests a court must consider in determining whether a transfer is in the interests of justice.  *Jumara*, 55 F.3d at 879–80.  The private interests include: (1) "plaintiff's forum preference as manifested in the original choice"; (2) "the defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."  *Id.*

at 879.  The public interests include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80.

"In addressing a motion to transfer, all well-pleaded allegations in the complaint are generally taken as true unless contradicted by the defendant's affidavits, and the Court may examine facts outside the complaint to determine proper venue." *Cigna Corp. v. Celgene Corp.*, CIVIL ACTION NO. 21-90-KSM, 2021 WL 2072210, at *2 (E.D. Pa. May 24, 2021) (internal quotations omitted).  The party seeking transfer "bears the burden of persuasion." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).  "[U]nless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F. 2d 22, 25 (3d Cir. 1970).

### III.   ANALYSIS

FedEx seeks transfer pursuant to Section 1404(a), so the Court first considers whether venue is proper in the Western District of Tennessee and then considers whether the interests of justice weigh in favor of transfer.

#### A.   *Venue Is Proper in the Western District of Tennessee*

Section 1404(a) permits a court to transfer an action to a district "where it might have been brought."  28 U.S.C. § 1404(a).  Accordingly, the Court may transfer this action to the Western District of Tennessee only if venue is proper there and that court can exercise both personal and subject matter jurisdiction over this action. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 729 (D. Del. 2012).

Venue and personal jurisdiction are proper in the Western District of Tennessee because both FedEx Services and FedEx Corporation have their headquarters and principal places of business in Memphis. (Doc. No. 12-1 at 10.) *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."); *id.* § 1391(c)(2) (An entity, "whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ."); *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563–64 (3d Cir. 2017) ("For a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are, therefore, the paradigm bases for general jurisdiction." (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 124–25 (2014))). And a court in the Western District of Tennessee would have subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are diverse[2] and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Accordingly, the Court has discretion to transfer this action to the Western District of Tennessee.

---

[2] As mentioned, Defendants are citizens of Tennessee because their principal places of business are in Memphis. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."). They are also citizens of Delaware, the State of their incorporation. (Doc. No. 36 ¶¶ 32–33.) *See* 28 U.S.C. § 1332(c)(1). Plaintiffs Solve Together, LLC and The Fine Companies, LLC, are unincorporated entities, and Daniel Fine is their sole member. (*See* Doc. No. 1 ¶¶ 3–6; Doc. No. 1-1 ¶ 32; Doc. No. 36 ¶¶ 30–31.) The companies, therefore, have the same citizenship as Fine. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) ("We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all members,' 'the several persons composing such association,' 'each of its members.'" (citations omitted)); *Lincoln v. Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104–05 (3d Cir. 2015) ("[T]he citizenship of partnerships and other unincorporated associations is determined by the citizenship of their partners or members." (quotation marks omitted)). It is unclear whether Fine was a citizen of Pennsylvania or Florida at the time the case was filed (*see* Doc. No. 1 ¶¶ 5–6; Doc. No. 1-1 ¶ 32), but either way, all Plaintiffs are diverse from all Defendants.

### B. *The Public and Private Interests Weigh in Favor of Maintaining this Action in the Eastern District of Pennsylvania*

Having found that this action could have been brought in the Western District of Tennessee, the Court must now consider whether the interests of justice weigh in favor of transfer.

#### 1. Private Interests

The Court considers each of the private interests identified in *Jumara*.

*Plaintiffs' Preferred Forum.* The plaintiff's choice of forum "is normally due considerable deference" and "should rarely be disturbed," particularly when the plaintiff resides in the preferred forum. *Berger v. Marriott Int'l, Inc.*, No. 20-2508, 2020 WL 4815803, at *2 (E.D. Pa. Aug. 19, 2020). Here, the Eastern District of Pennsylvania is Plaintiffs' home district and preferred forum, but since the filing of the complaint, Daniel Fine, the owner of Solve Together and FineCo, has become a resident of Florida. Although Mr. Fine no longer resides in Pennsylvania, and would have to travel to either district, Plaintiffs remain firm in their desire for the Eastern District of Pennsylvania as the preferred forum, and the Court finds this factor weighs against transfer.

*Defendants' Preferred Forum.* The defendant's choice of forum "is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." *EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005). FedEx seeks to transfer this action to the Western District of Tennessee, so this factor weighs in favor of transfer, although it is afforded "considerably less weight" than Plaintiffs' preference.

*Where the Claim Arose.* "[I]n determining where the claim arose in a breach of contract case, a court looks to 'the place of contract negotiation/execution, performance, or breach.'" *See*

*Air Liquide Indus. U.S. LP v. Butterball, LLC*, Civil Action No. 12–6390, 2013 WL 3345537, at *5 (E.D. Pa. July 3, 2013) (quoting *CoActive Capital Partners, Inc. v. Feathers*, No. 08–5506, 2009 WL 1911673, at *5 (E.D. Pa. July 1, 2009)). The contracts in dispute here were negotiated at the height of the pandemic, with Solve Together in Pennsylvania and FedEx in Tennessee (Doc. No. 23 at 17); the products contracted for were delivered to a warehouse in Tennessee (Doc. No. 12-1 at 12); and the alleged breach occurred when FedEx (located in Tennessee) refused to pay Solve Together (located in Pennsylvania) (Doc. No. 23 at 17). Considering these factors together, it is not clear if this claim arose in Tennessee, Pennsylvania, or some combination of Tennessee and Pennsylvania. Accordingly, this factor weighs neither in favor of nor against transfer. *See Turner Const. Co. v. Indep. Excavating, Inc.*, Civil Action No. 16-337, 2016 WL 1408120, at *3 (W.D. Pa. Apr. 11, 2016) (finding this factor neutral where the contract was negotiated in both venues and was breached in the transferee venue).

*Convenience of the Parties.* The fourth private factor requires courts "to consider the respective burden on the parties 'as indicated by their relative physical and financial condition.'" *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 623 (E.D. Pa. 2018) (quoting *Jumara*, 55 F.3d at 879). FedEx is a large, multinational corporation with operations within the Eastern District of Pennsylvania. (Doc. No. 23 at 14–15.) Solve Together has no presence in the Western District of Tennessee and was "nearly" forced into bankruptcy due to Defendants' alleged breach. (*Id.*) On the other hand, Solve Together currently has no employees, and its owner, Mr. Fine, now resides in Florida. (*Id.*; Doc. No. 1 ¶ 32.) Because Mr. Fine is located in Florida and would have to travel regardless of whether this case was transferred, this factor is neutral.

*Convenience and Availability of Witnesses.* The fifth private interest factor is "the

7

convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  Where a key witness is no longer employed by either party and resides outside the Court's subpoena power, this factor weighs strongly in favor of transfer.  *See Kane v. Ollie's Bargain Outlet Holdings, Inc.*, Civil Action No. 18-3475-BRM-DEA, 2018 WL 6168085, at *5 (D.N.J. Nov. 26, 2018).

FedEx contends that this factor weighs in favor of transfer because Lee Kneibert, Lori Ray, and Brian Baucke, former FedEx employees, would be key witnesses but are located beyond this Court's subpoena power.[3]  (Doc. No. 12-1 at 4–5.)  Mr. Kneibert resides in Jonesboro, Arkansas, which is within the subpoena power of the Western District of Tennessee but is well beyond the subpoena power of the Eastern District of Pennsylvania.  (*Id.*)  Both parties recognize that Mr. Kneibert is one of the most important witnesses in the entire action; in fact, in the Amended Complaint, Plaintiffs acknowledge that Mr. Kneibert "directly placed most of the disputed orders with Solve Together." (Doc. No. 36 ¶ 12.)  Next, Ms. Ray resides in Southaven, Mississippi, which is within the subpoena power of the Western District of Tennessee but outside the subpoena power of this Court.  (Doc. No. 12-1 at 8.)  Ms. Ray was Solve Together's primary contact regarding branded facemasks, and she is alleged to have had a conversation with Mr. Fine regarding the delivery of disinfecting wipes.  (*Id.*; Doc. No. 36 ¶ 88.) And Mr. Baucke, who resides in Memphis, was responsible for approving payment of the

---

[3] A federal court may subpoena an individual to appear at a trial, hearing, or deposition, only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).

8

invoices from Solve Together.[4,5] (Doc. No. 12-1 at 9.)

Plaintiffs argue that this factor does not weigh in favor of transfer because FedEx has not stated "that any witnesses residing in Tennessee or the Memphis area would *actually* be unavailable for trial in this District." (Doc. No. 23 at 15.) Plaintiffs also suggest that four witnesses identified in Plaintiffs' initial disclosures are located within this Court's subpoena power; however, they identify only one such witness, former Solve Together President Tami Mohney, who lives in Princeton, New Jersey. (*Id.*) They also note that "one of the seven customers with whom Solve Together was unable to consummate sales for PPE is based in Bridgeport, Pennsylvania, which is in this District," but they do not suggest that this customer would be a witness—let alone a key witness—in this action. (*Id.*) Finally, Plaintiffs suggest that the three former FedEx employees can "appear at trial by live video-feed, or their video-taped depositions can be played at trial for the jury." (*Id.*)

Considering these facts together, especially the location of the three former FedEx employees, this factor weighs in favor of transfer. Most critically, three material, nonparty witnesses are located beyond the subpoena power of this Court but are within the reach of the Western District of Tennessee. These witnesses are unavailable,[6] are likely to have key

---

[4] FedEx also suggests that this matter may require testimony from the Tennessee Department of Revenue, which is also outside this Court's subpoena power. (Doc. No. 12 at 12.)

[5] FedEx also identifies four current FedEx employees who reside in or around Memphis and are likely to have relevant information; however, the location of those employees has no bearing on the Court's analysis, as "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *See TruePosition, Inc. v. Polaris Wireless, Inc.*, C.A. No. 12–646–RGA–MPT, 2012 WL 5289782, at *6 (D. Del. Oct. 25, 2012).

[6] The fact that these witnesses fall outside this Court's reach is sufficient to demonstrate unavailability. *See Gore v. Stryker Corp.*, Civil Action No. 09–2987, 2010 WL 3069653, at *5 n.7 (E.D. Pa. Aug. 4, 2010) ("Actual unavailability in this context means outside the subpoena power of the forum, such that testimony from the witness would be restricted to deposition or video testimony.")

testimony, and Mr. Kneibert, in particular, is one of the main players in the proceedings. *See Kane*, 2018 WL 6168085, at *5 (finding the convenience of witnesses weighed in favor of transfer where the defendant "identified one key witness," a former employee who resided beyond the court's subpoena power but fell within the subpoena power of the transferee court); *Stillwagon v. Innsbrook Golf & Marina, LLC*, Civil Action No. 2:11–cv–1338, 2013 WL 1180312, at *28 (W.D. Pa. Mar. 20, 2013) ("[H]ere, where none of the listed potential non-party witnesses are within this Court's subpoena power, but all are presumably within the proposed transferee Court's subpoena power, this factor weighs heavily in favor of transfer."); *Consol. Risk Servs., Inc.*, 2006 WL 1737471, at *4 (finding that this factor "weigh[ed] heavily in favor of transfer" where the defendants identified six material witnesses beyond the subpoena power of the transferor court). Moreover, Plaintiffs identified only one potential witness located within this Court's subpoena power, Ms. Mohney, but they did not identify with any particularity the topics about which she might testify. And Mr. Fine, who is likely to be Plaintiffs' key witness, is located in Florida, so he would have to travel regardless of whether this action is tried in Pennsylvania or Tennessee.

Finally, the Court is not persuaded by Plaintiffs' suggestion that the former FedEx employees can appear by video deposition. Many of the claims in this case hinge on the existence of purported oral agreements. To determine whether any such agreements were ever made, the jury will need to assess the credibility of witnesses, and there is no doubt that live— rather than video-recorded—testimony better enables a factfinder to assess a witness's credibility. *See InfoMC, Inc. v. Comprehensive Behav. Care, Inc.*, Civil Action No. 10–4907, 2012 WL 1114360, at *17 (E.D. Pa. Mar. 30, 2012) ("[I]t is well recognized that live testimony is preferred over videotaped depositions or other means of presenting evidence."); *see also*

*Wireless Media Innovations, LLC v. LeapFrog Ents., Inc.*, C.A. No. 13–1545–SLR–SRF, 2014 WL 1203035, at *4 (D. Del. Mar. 20, 2014) (explaining that "deposition testimony is not a complete substitute for live trial testimony").

Because at least three key witnesses are located in or near the Western District of Tennessee, Mr. Fine must travel whether the case is tried in either district, and it appears that at most only one Plaintiff witness (who is not even mentioned in the complaint) is located in or near the Eastern District of Pennsylvania, this factor weighs strongly in favor of transfer.

*Location of Books and Records.*  The final private factor courts consider is the availability of books and records.  *See Jumara*, 55 F.3d at 879.  "This factor is considered by courts only to the extent that files could not be produced in the alternative forum," and "[i]n this current electronic age, it is difficult to imagine that business files cannot be produced in either forum."  *SalandStacy Corp. v. Freeney*, Civil Action No. 11–3439 (JLL), 2012 WL 5451522, at *6 (D.N.J. Nov. 5, 2012).  FedEx suggests this factor weighs in favor of transfer, as they will be required to inspect Plaintiffs' warehouses *in situ*, and those warehouses are located "in Memphis and elsewhere, but apparently not Philadelphia." (Doc. No. 12-1 at 12.)  As an initial matter, it is not readily apparent to the Court why the parties would need to conduct physical discovery.  But even assuming that document and written discovery would be insufficient, the physical evidence is dispersed in a number of warehouses, some of which are located in the Western District of Tennessee and some of which are not.  (*See id.*)  Because the documentary evidence can be produced electronically and the physical evidence is not concentrated in any one judicial district, this factor is neutral.

\*   \*   \*

In sum, one factor weighs against transfer, three factors are neutral, and two factors weigh in favor of transfer, and one of those factors—the convenience of witnesses—weighs

11

strongly in favor of transfer.  On balance, the Court finds that the private interests weigh in favor of transfer.

### 2. Public Interests

Next, the Court considers each of the public interests identified in *Jumara*.

*Enforceability of a Judgment.*  Neither party suggests that a judgment in either the Eastern District of Pennsylvania or the Western District of Tennessee would be unenforceable. Accordingly, this factor has no bearing on the Court's balancing.  *See Beuchat v. Pennsylvania*, C.A. No. 1:19-CV-81, 2019 WL 4962693, at *2 (W.D. Pa. Oct. 8, 2019) ("The enforceability of a judgment rendered in the Western District is no less enforceable than one in the Middle District, so this factor is neutral.").

*Practical Considerations that Could Make Trial More Efficient.*  This factor looks at whether transfer would make litigation easier, more expeditious, or less expensive.  *See Jumara*, 55 F.3d at 879.  FedEx contends transfer would minimize the costs of trial, as many of FedEx's witnesses are located in or near the Western District of Tennessee and Plaintiffs' only witness, Daniel Fine, resides in Florida, not Pennsylvania.  (Doc. No. 12-1 at 11–12.)  However, Plaintiffs respond that they identified nearly a dozen witnesses in their Initial Disclosures, at least four of whom are located within 100 miles of the United States Courthouse in Philadelphia.[7]  (Doc. No. 23 at 10.)  Assuming that roughly the same number of witnesses are located in or near both judicial districts, transfer would shift the costs of trial, not decrease them.  *See Berger*, 2020 WL 4815803, at *5 ("[T]ransfer to Oregon would likely shift the costs of litigation, rather than significantly reduce them. . . . We therefore conclude that this factor is neutral in our analysis.").

---

[7]Although Plaintiffs claim there are four witnesses within this Court's reach, FedEx has identified at least seven such witnesses, including three key witnesses who are no longer FedEx employees and are outside the reach of this Court's subpoena power.

Because there are witnesses in or near both fora and neither party has identified any other efficiencies unique to either district, this factor is neutral.

*Court Congestion.* Neither party suggests that congestion in either district weighs in favor of or against transfer; however, the Court's review of the Federal Court Management Statistics demonstrates that this factor weighs ever so slightly against transfer. Judges in the Western District of Tennessee have slightly higher caseloads than judges in the Eastern District of Pennsylvania. On average, judges in the Western District of Tennessee receive 378 filings per year and have 555 cases pending. *See* U.S. Courts, *Federal Court Management Statistics*, (June 2022) https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2022. In the Eastern District of Pennsylvania, however, judges receive an average of 295 filings per year and have 429 cases pending. *Id.* The Western District of Tennessee also takes slightly longer to resolve cases than does the Eastern District of Pennsylvania: on average, it takes 10.5 months from filing to disposition in the Western District of Tennessee and only 6.7 months in the Eastern District of Pennsylvania. *Id.* The Court acknowledges that these statistics are not meaningfully different for either district, but, if anything, the slightly lower caseload in this district weighs slightly against transfer.

*Local Interest in Deciding Local Controversies at Home.* FedEx concedes that "[b]oth districts may have an interest in deciding this action due to the residence of some of the parties." (Doc. No. 12-1 at 14–15.) Plaintiffs contend that Pennsylvania has a stronger interest, as the Commonwealth has an interest in providing a forum wherein Plaintiffs can hold Defendants responsible for their failure to make payments due under the contracts. (Doc. No. 23 at 15.) The Court is not persuaded by Plaintiffs' argument and finds that both fora have an interest in this action: Pennsylvania may have an interest in protecting Plaintiffs from financial loss, while

13

Tennessee may have an interest in preventing corporations headquartered in the state from failing to comply with their contractual obligations. *See McNulty v. J.H. Miles & Co.*, 913 F. Supp. 2d 112, 123 (D.N.J. 2012) ("[W]hile New Jersey may have a local interest in protecting its citizens from financial harm, Virginia may have a similar local interest in regulating any alleged wrongdoing by Virginia corporations."). Because both districts may have an interest in this action, this factor is neutral.

*Public Policies of the Fora.* Neither party suggests that either forum has any public policies relevant to this analysis, other than a policy of protecting its citizens from harm, which is addressed in the "local interests" factor above. Accordingly, this factor is also neutral.

*Familiarity of Trial Judge with Applicable State Law.* FedEx contends that a judge in the Western District of Tennessee would be better equipped to preside over this action because one of the contracts at issue (the non-circumvention, non-disclosure agreement) is governed by Tennessee law. (Doc. No. 12-1 at 13.) But there are eight contracts in dispute, and FedEx itself concedes that "a combination of Tennessee and Pennsylvania law [may] govern the remainder of the Plaintiffs' claims." (*Id.*) Because different claims may be governed by different state laws, neither district would have greater familiarity with the applicable law than the other district, and this factor is in equipoise.

\* \* \*

In sum, almost all of the public interests are neutral, and the only factor that weighs in either direction, court congestion, weighs very slightly against transfer.

\*   \*   \*

Although Plaintiffs chose to litigate this action in the Eastern District of Pennsylvania, at least three of the key witnesses who are no longer employed by FedEx reside beyond this Court's subpoena power but can be subpoenaed by the Western District of Tennessee. And Plaintiffs'

14

key witness now lives in Florida, so transfer is not unduly burdensome given he will have to travel whether the case proceeds in Pennsylvania or Tennessee. Considering the *Jumara* factors together, and especially given the unavailability of three key witnesses, the Court finds that the interests of justice mandate transfer.

## IV.    CONCLUSION

For the reasons above, FedEx's motion is granted. An appropriate Order follows.